Statement of the Case.
NICHOLLS, J.
On the 11th of October, 1905, W. E. Hamilton, John S. Young, F. T. Whited, J. J. Jordan, and J. B. Filhiol, representing themselves as liquidating commissioners of the Shreveport National Bank in liquidation, filed “a full, complete account and statement of their administration as liquidating commissioners,” asking that personal notice be given to the stockholders residing in the state, that a curator ad hoc be appointed to represent the absent stockholders shown on the list of stockholders, that due publication of the filing of the account should be made, and that after due proceedings it be approved and themselves discharged. On October 28, 1905, Frank B. Hayne and IT. De L. Yineent filed an opposition opposing specially and generally each and every item in said account. They opposed said account for the reason that same was not a full and true compliance with the aforementioned decree of this court, inasmuch as the purported liquidation of said Shreveport National Bank took place on March 3d of this year, and said persons should be compelled to supplement said account by a full and, true account of their dealings with said'bank, its assets and liabilities, from March 18 to May 3, 1905, inclusive ; that between said dates, to wit, from March 18th to May 3d, inclusive, said persons in the qualities either of liquidators or of directors, and in their personal individual capacity, absorbed and appropriated to themselves sufficient of the assets of said bank to pay the stockholders the full par value of their stock; and that their wrongful acts during that period, prior thereto, and during the time covered by this account, have depreciated the value of the stock in such a manner as to render them liable individually in solido, to the stockholders thereof, for the par value of said stock, as will fully and at length hereinafter be set forth.
Opponents show that, in the year 1904, the above-named persons (being then stockholders, and constituting a majority thereof, and directors in the Shreveport National Bank), in violation of their duties as directors of said corporation and trustees of the stockholders therein, united and conspired to take away from the stockholders therein the management of said bank, and to absorb all its assets for themselves; that to this end the said F. T. Whited, W. E. Hamilton, and John S. Young, together with said Jordan and Filhiol (the latter being employés of said Hamilton), acquired the ownership of the majority of the shares of the capital stock of the Louisiana Bank & Trust Company, a banking corporation organized under the laws of Louisiana, and amended the charter of said bank so as to increase its capital stock for the objects and purposes to be hereinafter fully set forth.
Opponents show that, in pursuance of this same plan, said directors being at the time owners of a majority of the shares of the capital stock of the Shreveport National *667 Bank, as well as the controlling influence in the Louisiana Bank & Trust Oo., caused, a meeting of the stockholders of the national hank to be held in the city of Shreveport on - for the purpose of forcing upon the minority stockholders a liquidation of said bank, with the aforementioned persons (the accountants herein) as liquidators; the object of this being to put themselves thus in absolute control of the affairs of said bank. That said meeting was held, and a majority of the shares of the said bank appear to have been cast for said liquidation, and the parties above named were then and there selected as such liquidators pursuant to the plan above set forth. Opponents show that the above-mentioned acts were for the purposes above named, and are a violation by said directors of their fiduciary obligations and a wrong to the minority stockholders, even if said liquidation and election were conducted according to law, which opponents deny, and the right to assert which in proper proceedings they expressly reserve. That, in pursuance of their plan of obtaining the assets of the bank at their own price, said persons, before the date at which they claim to have gone into possession as liquidators, to wit, May 3, 1905, turned over to the Louisiana Bank & Trust Company, of which they constituted a majority of the stockholders, as well as directors and officers thereof, all the deposits of the Shreveport National Bank and all the best loans and accounts of said bank, amounting in the aggregate to over $200,000, and that they did, in addition, pay to George W. Signor, out of the assets of the Shreveport National Bank, par value for this stock therein, amounting to $-. And that they paid, without any legal authority therefor, $5,000 to one of their number, to wit, W. E. Hamilton, for services as manager of said bank, though said bank was provided with all the officers provided for by its charter. Opponents show that said accountants should be held liable herein for the said $5,000 so paid to W. E. Hamilton, as well as for the amount paid to Signor as aforesaid, and also for whatever, if any, difference was allowed to the Louisiana Bank & Trust Company between the face amount of the accounts so sold and the price at which they were so transferred. That, after their alleged induction into office, said parties did not discharge the legal duty of liquidators to settle the debts of the corporation and collect its assets, but took no action whatever in that direction, but, on the contrary, proceeded to buy up all the stock possible for themselves from the stockholders in the Shreveport National Bank with the funds of the said bank at the price of 41.52 per cent., which stock they sold to the Louisiana Bank & Trust Company for 73.169 per cent. That, being trustees of the stockholders of the Shreveport National Bank, it was their duty to act in the interests of said stockholders, and that the profits so made by such trustee dealing in the property of those represented by them should be held to have inured to the benefit of said Shreveport National Bank. That the last amount so made appears from the books of the' Louisiana Bank & Trust Company, but is unknown at present to opponents, but will be made to appear on trial hereof. That, further in pursuance of the above plan, said accountants caused an alleged meeting of stockholders of said national bank to be held in the office of said Louisiana Bank & Trust-Company on August 30, 1905, at which meeting no one was represented except said persons and the Louisiana Bank & Trust Company, and that said persons there voted to sell to themselves (under the name of the Louisiana Bank & Trust Company) all the assets of said Shreveport National Bank for the sum of $33,466. And that an act of sale in pursuance thereto was passed, purporting to convey to said Louisiana Bank & Trust Company all the furniture, fixtures, and bills *669 receivable, overdrafts, and all other assets of the Shreveport National Bank for said price and consideration, and that said Louisiana Bank & Trust Company thereupon took possession thereof and appropriated said assets to its own use.
That said alleged sale was illegal, null, and void, for the following reasons, to wit:
(1) That said purported sale, being made by said parties, who were then and there trustees of the stockholders of the Shreveport National Bank, to themselves (said Louisiana Bank & Trust Company being owned by them almost entirely, and being under their absolute and complete control), was, and is, without regard to its legality, a fraud upon the rights of the stockholders.
(2) That the majority of stock in the Shreveport National Bank is held by the Louisiana Bank & Trust Company itself, and that said bank is, under the laws of Louisiana, incapable of owning stock in another corporation, and that therefore no action taken by the alleged stockholders’ meeting of August 30,1905, could be legal or valid.
(3) That said purported sale was a private sale of opponents’ property, in violation of law, under which no sale could have taken place, except at public auction, by virtue of a judgment of a court of competent jurisdiction.
(4) That, under the acts of Congress relating to the liquidation of national banks, it was the duty of those in charge of the bank to collect the debts due it and distribute the proceeds in due course, and that they had no right or authority to sell same. That by their said unlawful acts in selling said property to themselves at private sale as aforesaid, and said property having been converted to the use of the Louisiana Bank & Trust Company, said accountants have rendered themselves liable to the Shreveport National Bank for the face value of said accounts, to wit, $97,933.97, instead of $33,466, for which they charge themselves in said account.
Further, they oppose allowing as credits to-said accountants the following sums shown: by said accounts:
Rent of bank room................. $200 00
Rent of office and vault............. 100 00
Clerk’s hire........................ 500 00
—for the reason that said amounts were not paid, and are not intended to be paid, for benefit of the bank, but for the sole advantage and benefit of W. B. Hamilton, or of the Louisiana Bank & Trust Company.
They oppose the allowance to Alexander & Wilkinson, out of the funds of said bank, of the sum of $350 as attorney’s fees for-defending suit brought by your opponents-against these accountants, for the reason that it was the duty of said parties to have filed said accounts without suit, and that the-defense set up by them in that suit was not for the benefit of the bank, but for their own individual benefit, and that opponents succeeded in tha-t suit in compelling them to file-this account; that said attorney’s fees are the individual debt of said liquidators, and not that of the bank. They oppose the allowance of attorney’s fees also to said firm of attorneys for filing this account, for the reason-that this account shows grossly improper-management on the part of the liquidators, and that their administration was for their-own benefit, and not for that of the stockholders of the bank, and that, for this reason, the fees they have incurred for employing attorneys for their own use should be-paid by themselves, and not by the bank. That, in any event, said fees are excessive.
For the same reason, and for the further-reason that there is no law authorizing same, and that there was no action or agreement on the part of the stockholders as to same, they oppose the allowance to the so-called, liquidators of any amount whatever as salary or as commission. That, by reason of their-wrongful and illegal acts as aforesaid, said liquidators should be removed from their trusts. They show further that by reasons *671 oí their wrongful acts as aforesaid, designed to benefit themselves to the prejudice of the bank, they have caused great damage to said bank and to its stockholders, and that they should not be allowed to share in the assets ■of said bank until opponents and such other stockholders as may wish to join herein shall have been paid in full the account of the ■capital stock owned by them.
In view of the premises, opponents prayed that this opposition be duly filed in answer to the petition and account herein filed; and that, after all legal delays and due proceedings had, there be judgment amending said account as follows:
(1) So as to charge accountants individually with the $5,000 paid W. E. Hamilton as aforesaid, as well as with the amount paid ■G. W. Signor, to be shown on trial hereof.
(2) 'Charging them individually with the profits made by them as aforesaid, in dealing in the stock of the Shreveport National Bank; the amounts to be shown after due proceedings.
(3) Charging them individually with the ■sum of $64,467.97, the difference between the amount of the assets of said bank and the amount for which they purport to have sold them to the Louisiana Bank & Trust Company, as aforesaid.
(4) That they be refused the credits for rent, clerk's hire, salary, commissions, and attorney’s fees, as opposed above.
(5) That there be judgment that the said W. E. Hamilton, E. T. Whited, J. S. Young, J. J. Jordan, and J. B. Eilhiol be refused and denied the right to participate in the distribution of the assets of this bank until ■opponents and such other stockholders as are not guilty of or privy to the acts complained ■of are paid $100 per share of.stock owned by them out of such assets. And opponents further pray for judgment ordering said accountants to file a true, correct, and itemized account of their dealing with said bank, and its assets from January 12, 1905, to May 3, 1905, inclusive, within a delay to be fixed by this court, and that opponents’ right to proceed against them for such acts prejudicial to them as are not set up herein be reserved. And they further pray that, after trial hereof, there be judgment removing said liquidators from office for their violation of their trust as such liquidators; and that other and suitable persons or person be placed in charge of the affairs of said bank for the purpose of bringing such suits as may be necessary and of distributing the assets among the stockholders. And opponents further pray that all costs of filing account and of proceedings connected therewith be paid by accountants individually, and for all necessary orders, and for general relief.
Mrs. Rebecca Hoffman and Louis Hoffman filed an opposition joining in the allegations and prayer of Hayne & Vincent, as did Herman Loeb and Lea B. Loeb. Accountants answered, pleading first the general issue. They admitted that they were appointed liquidators of the Shreveport National Bank by a meeting of the stockholders, and as such liquidators are in charge of and administering the affairs of said bank; but they specially deny any necessity for the appointment of a receiver, or that they were the directors of said bank at the time of the acts complained of, and, even if they were, such facts constituted no ground for the appointment of a receiver herein.
They specially denied that they have in any manner mismanaged or misused any of the funds or property intrusted to them, or that they have done any act justifying the interference of this court, or the appointment of a receiver as prayed for. That they were duly elected to their said position without opposition from any source, receiving the affirmative votes of more than three-fourths of the stockholders of said bank, none of whom have complained or are now complaining of their administration.
In view of the premises, they pray that *673 plaintiffs’ demand for the appointment of a receiver be rejected, at their cost, and for general relief.
The district court rendered judgment, ordering and decreeing that the account filed be amended so as to disallow and reject the following items, under the head of “Items to be paid”:
Rent of bank....'..................$200 00
Rent of vault...................... 100 00
Clerk’s hire........................ 500 00
Salary of liquidators................ 900 00
—reserving the commissions therein claimed, and reducing on said account the amount paid for parish, state, and city taxes, to the sum of $809.57. It decreed that the costs be paid by the bank in liquidation.
Vincent and Hayne and Loeb, averring that the judgment was contrary to the law and the evidence as adduced on the trial of the opposition, prayed for a new trial.
This motion was overruled.
Mrs. Rebecca Hoffman, Louis Hoffman, Frank B. Hayne, H. De L. Vincent, Herman Loeb and L. B. Loeb applied for and were granted an appeal to the Supreme Court executing an appeal bond.
No amendment of the judgment has been asked.
Opinion.
Opponents say they did not consent to the proceeding by which the Shreveport National Bank was thrown into liquidation, and the parties, now liquidators of the bank, were selected as such. The correctness of that action is not before us. Opponents do not, in this proceeding, seek to set it aside. On the contrary, they have heretofore charged them with maladministration as such, and sought to have them superseded by the appointment of a receiver, and they still do so. Accountants are before the court only in respect to their actions as liquidators. Opposition to the same is confined to their acts as such. The prayer of the opponents that the accountants be charged individually with the $5,000 paid to W. B. Hamilton, as well as the amount paid to G. W. Signor, cannot be discussed in this proceeding. Those transactions antedated the administration of the Shreveport National Bank by accountants as liquidators. If they be liable for the amounts claimed as directors, the demand must be advanced in some other proceeding.
Opponents complain that an attempt was made by the parties now. acting as liquidators to bring about at one time a consolidation of the Shreveport National Bank with the Louisiana Bank & Trust Company, and that they purchased stock of the former company at that time, and while being directors, for the purpose of accomplishing that result. The proposed consolidation was never carried out. There was no resulting injury from the action set out or shown. The fact that the parties named here were directors of the Shreveport National Bank did not estop them from purchasing, from the other parties holding the same, stock of the corporation at as low a rate as the owners thereof thought proper to sell it. If any one was injured thereby, it was the owners of the stock so sold. No complaints have been made by such parties. The moneys paid for such stock belonged to the purchasers individually, and the stock purchased became their absolute property. They were free to sell it to whomsoever they thought proper, and,- if they sold it to the Louisiana Bank & Trust Company, of which they were at the' time directors, at a higher price than it was worth, or than they had paid for it, that was a matter to be complained of by the stockholders of that company, if at all.
Opponents complain that the assets of the liquidating bank were improperly sold to the Louisiana Bank & Trust Company at private sale while accountants were liquidators. It cannot be said that the sale was made by *675 the liquidators themselves. A meeting of all the stockholders was convened by the liquidators for the purpose of deliberating upon what was best to be done, and should be done, under existing circumstances, for the interest of all concerned. The intended meeting was advertised, and all parties in interest were notified. It was held, and a sale of the assets was agreed upon by the stockholders present. At that meeting the Louisiana Bank & Trust Company was present as a stockholder, but it did not vote. There was objection to the proposed disposition of the assets from no quarter, and they were sold as agreed upon by the stockholders. They were not sold by the liquidators as such, but were offered for sale at auction under instructions from the stockholders; the assets being offered and sold separately, and finally in bulk, when individual bidders failed. If individual stockholders objected to the meeting of the stockholders for the purpose stated, they should have made known their objections before the meeting took place, or at least at that time. Their silence would well be taken as acquiescence. The price obtained for the assets was above two-thirds of the appraised value thereof made on January 12, 1905, before the sale, by Silas H. Cooper, United States bank examiner, J. J. Jordan, cashier of the Shreveport National Bank, and S. M. Watson, a stockholder. The price was a fair one, as shown by the evidence, and larger, we think, than could have been obtained through judicial proceeding. The sale was not made to the liquidators as purchasers.
At the meeting referred to, the stockholders present indorsed and approved and ratified the acts of the liquidators in disposing of a portion of the assets of the bank and paying its debts with the money thus realized, and in transferring the deposits to the Louisiana Bank & Trust Company, and declared that, having examined the records of the transactions of the liquidators and their administration up to the present time, they-indorsed and ratified the same.
We do not see how the liquidators could have acted differently from what they did in respect to the deposits. The transfer of the same to the Louisiana Bank & Trust Company was with the consent of the depositors, and matters had reached a point when they could go on no longer as they were. Opponents do not ask, even if they could successfully ask, to have the sale of the assets annulled. They seek to have the liquidators charged individually with their “face value” under the circumstances stated. We do not think there is any just or legal foundation for such a claim. Opponents have not, we think, been injured. We find no fraud or bad faith on the part of the liquidators in the premises.
We find no ground for decreeing, as asked by opponents, that the liquidators be refused and denied the right of participating in the distribution of the assets of this bank, until opponents, and such other stockholders as are not guilty or privy to the acts complained of, are paid $100 per share of stock owned by them out of such assets. We find no grounds for refusing to have the fees of the attorney and the commissions of the liquidators paid from the funds in the hands of the liquidators, and no grounds for removing the liquidators and appointing a receiver.
We think the judgment of the district court has done justice to all parties, and it is hereby affirmed.